245 F.2d 888
 57-2 USTC P 9790, 57-2 USTC P 9975
 Nona B. WOOD, Owen A. Wood, Owen A. Wood and Nona B. Wood, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Owen A. WOOD and Nona B. Wood, Respondent.
 No. 16090.
 United States Court of Appeals Fifth Circuit.
 June 28, 1957.
As Modified on Petition for Rehearing Aug. 13, 1957.
 
 Wright Matthews, Dallas, Tex., Douglas W. McGregor, Houston, Tex., McGregor & Sewell, Houston, Tex., of counsel, for petitioner.
 Meyer Rothwacks, A. F. Prescott, Lee A. Jackson, Attys., Dept. of Justice, John M. Morawski, Sp. Atty., Washington, D.C., Charles K. Rice, Asst. Atty. Gen., John Potts Barnes, Chief Counsel, Int. Rev. Serv., Washington, D.C., for respondent.
 Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 This is a Federal income tax case. The taxpayers, Owen A. Wood and Nona B. Wood, are husband and wife and are residents of Texas. The tax years involved are 1945 through 1949. The taxpayers filed separate returns reporting community income for the years 1945 through 1947, and joint returns for 1948 and 1949. The taxpayers made land purchases in the western part of Florida of 5240 acres in 1943, 17,755 acres in 1944, 3437 acres in 1945, and 220 acres in 1946, a total of 26,652 acres. They undertook to make sales by mail solicitation. Purchase order forms were sent to prospective customers. The 1944 purchase order form provided that if the purchaser was not fully pleased with the tract selected for him by Wood he could exchange it for any unsold farm of the same size. One of the forms used in 1945 stated that Wood agreed promptly to send the purchaser a plat showing the location of the tract and if the purchaser was not satisfied with the tract as shown on the plat, he would promptly advise Wood who would refund the payment. Another 1945 purchase order form provided that if the purchaser was not pleased with his farm when he made an inspection of it he might select any unsold farm and purchase it at its then price, applying upon it the payments previously made. A form letter used in replying to inquiries made in response to advertisements urged the sending of a purchase order and a first payment with a visit to the site 'just as soon as you can'. In this letter it was said that the purchaser, if not satisfied with the farm selected for him by Wood, could select other property and receive credit for the prior payments, or if the purchaser did not wish another tract the purchase contract could be cancelled and the amount paid would be refunded. The 1946 form of purchase order recited that if the purchaser, upon receipt of plats showing the location of the farm selected for him, was not pleased with its location, he could return the plats within five days and get back all money paid by him. Where contracts were defaulted or were cancelled by agreements, refunds were sometimes made, but in other instances the amounts received were retained by the taxpayers. Until final payment on a contract had been made, the taxpayers retained possession of the lot and paid the property taxes on it.
 
 
 2
 The taxpayers, in their income tax returns, reported their profit on their land sale transactions in a manner referred to as a completed contract basis. Using this basis the taxpayers did not include any of the payments received on a land sale installment contract until the year in which the final payment was made and the deed delivered. When the final payment was made, all the profit from the sale was included in the tax return as gross income. The taxpayers deducted as business expense substantial amounts paid by them for the construction and maintenance of roads in the development. The Commissioner of Internal Revenue disagreed with the taxpayers' method of computing their tax and determined that the profits on land sales represented taxable income during the years received. The Commissioner concluded that the cost of building and maintaining roads was a capital outlay to be added to the cost of the unsold lots. Deficiency and negligence penalty assessments were made for the years 1945 through 1949. The taxpayers petitioned the Tax Court for a redetermination of the taxes as assessed by the Commissioner. The proceedings were consolidated in the Tax Court. It decided that the Commissioner's method of computing income was not shown to be arbitrary or an unreasonable abuse of discretion; the taxpayers' gross income for 1945 and 1946 was more than twenty-five per cent. greater than reported and hence, under Section 275(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. I.R.C.1939, § 275(c), the notices of deficiencies for those years were not barred by the three-year statute of limitations, 26 U.S.C.A. I.R.C.1939, § 275(a); that the road costs should be capitalized; that no justification for imposing penalties was shown; and that there were tax deficiencies for 1945, 1946 and 1947, of $12,950.40, $35,971.07, and $2,041.86. The Tax Court, applying the method of computation used by the Commissioner, found overpayments of income tax of $5,435.10 for 1948 and $225.00 for 1949. The taxpayers have petitioned for a review of the Tax Court's decision as to the years 1945, 1946 and 1947, and the Commissioner has filed a Petition for Review of the decision as to the 1948 and 1949 taxes as a protection in the event it is held that the taxpayers' method of computing income was correct.
 
 
 3
 The Internal Revenue Code makes the following provisions:
 
 
 4
 'The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period os other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.' 26 U.S.C.A. I.R.C.1939, § 41.
 
 
 5
 Supplementing the Code provision are the following regulations:
 
 
 6
 'Net income must be computed with respect to a fixed period. Usually that period is 12 months and is known as the taxable year. * * * The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for. (See sections 29.42-1 to 29.42-3, inclusive). If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner as in the opinion of the Commissioner clearly reflects it.' Reg. 111, § 29.41-1.
 
 
 7
 'Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. * * * All items of gross income shall be included in the gross income for the taxable year in which they are received by the taxpayer, and deductions taken accordingly, unless in order clearly to reflect income such amounts are to be properly accounted for as of a different period. * * *' Reg. 111, § 29.41-2.
 
 
 8
 'Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used in this section the term 'long-term contracts' means building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. * * *' Reg. 111, § 29.42-4.
 
 
 9
 The taxpayers urge that each lot purchaser had at all times prior to the final payment upon his installment contract an unqualified right to cancel his contract and receive a refund of all payments made. The Tax Court found no legal obligation binding the taxpayers to make refunds. It held that the installment payments were received without restriction and the taxpayers' right to use them was absolute. These findings were not erroneous. Commissioner of Internal Revenue v. Union Pacific Railroad Co., 2 Cir., 1936, 86 F.2d 637; Commons v. Commissioner, 20 T.C. 900. See Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007.
 
 
 10
 The provisions of Reg. 111, § 29.42-4 do not apply to the type of transactions here involved. The contracts of the taxpayers for the sale of real estate are in no sense building, installation or construction contracts such as are within the terms of the quoted regulation.
 
 
 11
 The method used by the taxpayers during the tax years under review had been used by the taxpayers during prior years without criticism or objection by the Commissioner. This is urged by the taxpayers as tantamount to approval by the Commissioner and that the accounting procedures followed for a period should not be changed. The Commissioner cannot be obligated to continue an erroneous method or, by acquiescence, waive for future years the discretionary power which the Congress has granted. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725.
 
 
 12
 The statutory provision, § 41, supra, giving to the Commissioner the authority to make computations by such method as in his opinion clearly reflects income is a grant of wide discretion, and his action may be challenged only upon a clear showing that he has abused his discretion. Standard Paving Co. v. Commissioner of Internal Revenue, 10 Cir., 1951, 190 F.2d 330.
 
 
 13
 We have no difficulty in reaching the conclusion that there is no error in the decision of the Tax Court approving the changed method of computing the taxpayers' income from installment sales of real estate.
 
 
 14
 The taxpayers challenge the Commissioner's right to make deficiency assessments for the tax years 1945 and 1946. The controlling statutory provisions are:
 
 
 15
 'The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *' 26 U.S.C.A. I.R.C.1939, § 275(a).
 
 
 16
 'If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.' 26 U.S.C.A. I.R.C.1939, § 275(c).
 
 
 17
 The taxpayers filed their tax returns for the year 1945 on March 15, 1946, and their returns for 1946 on February 24, 1947. Unless the Commissioner can bring the proposed deficiency assessments for these years within Section 275(c) his efforts to sustain the additional tax must failed. There is not, and this the Commissioner concedes, any presumption in favor of the findings of the Commissioner to bring an assessment within the operation of Section 275(c). The Commissioner has the burden of proof of showing that the five-year limitation period is applicable. 10 Mertens Law of Federal Income Taxation 212, § 57.37. The Tax Court held that the Commissioner has sustained that burden.
 
 
 18
 In the deficiency notices the Commissioner set forth his formula for determining the taxpayers' income on installment real estate sales in these words:
 
 
 19
 'As a dealer in real estate, you have reported on the completed contract basis and have deferred the transfer of title until all payments have been made, retaining in most cases payments made on contracts which were defaulted. Therefore, the cash received on purchases in excess of cost of property sold is income in the year received and the amounts received on cancelled contracts (less refunds, if any) is income in the year received. Therefore, income reported has been adjusted. * * *'
 
 
 20
 From the Tax Court's findings it appears that:
 
 
 21
 'The report of the revenue agent examining the returns of petitioners was adopted by the respondent, and became the basis for the determination of the deficiencies. For the year 1945 the revenue agent scheduled the cards representing contracts which were incomplete in that year, including amounts received on such contracts in prior years. Against these receipts he offset the cost, appearing on the cards, of the tracts for which payments were being made. In each instance the down payment exceeded the cost of the tract sold. In addition, the agent scheduled the amounts received in 1945 on contracts subsequently canceled, deducting therefrom the amount of refunds made to purchasers. The sum of the above adjustments was added to the income reported in 1945.
 
 
 22
 'The following summary reflects the results of the agent's adjustments for the taxable year 1945:
 
 
 23
 Cash received in 1945 on incomplete
 contracts ................................ $58,343.15
Cash received prior to 1945 on incomplete
 contracts .................................. 1,270.00
 ----------
 59,613.15
Land cost on which above payments were
 received .................................. 22,082.85 $ 37,530.30
 ----------
Cash received in 1945 on canceled contracts ... 15,181.10
Refunds applicable to 1945 ..................... 2,367.00 12,814.10
 ---------- ------------
Additional gross profit 1945 ............................. 50,344.40
1945 gross profit reported ............................... 57,221.70
 ------------
Corrected 1945 gross profit .............................. $107,566.10"
 
 
 24
 It is assumed that these computations were also adopted by the Tax Court as in its opinion it is stated that 'Petitioners (taxpayers) do not challenge the correctness of the amounts determined by the respondent (Commissioner), if it is held that the method of accounting employed by them does not correctly reflect their taxable income.' We find no place in the record where, by admission or otherwise, the taxpayers accepted the deficiency determinations of the Commissioner conditioned only upon their accounting methods being held incorrect. At the beginning of the trial there was a stipulation as to some of the facts. In this it was agreed:
 
 
 25
 'In the event that respondent sustains his burden of proof under section 275(c) of the Internal Revenue Code and the calendar year 1945 is not barred by the three-year statute of limitations provided by section 275(a) of the Internal Revenue Code, the adjustments set forth in the notice of deficiency for the calendar year 1945 to which petitioners have assigned error are agreed to as follows:
 
 
 26
 'a. Adjustment (a), increase in gross profit of $50,344.40, is to be litigated.'
 
 
 27
 At the outset then, of the trial before the Tax Court, it was agreed that the Commissioner would have the burden of proving the facts to bring the years 1945 and 1946 under the five-year statute and the increase of gross income was an issue. It remained an issue throughout the trial.
 
 
 28
 By the Commissioner's formula, the cash received in excess of property costs and the amount received on canceled contracts less refunds is income in the year received. The formula would exclude payments received in prior years and so would eliminate the $1,270.00 item representing cash received prior to 1945, and reduced the adjusted cash receipts from $59,613.15. The agent's summary shows an item of 'Additional gross profit 1945 $50,344.40.' This figure, we think, should be reduced by $1,270.00 to $49,074.40. To his 'additional gross profit' figure the agent added $57,221.70, the amount shown by the taxpayers' return as gross profit. Only a portion of this sum was received in 1945, and only the portion so received was, under the Commissioner's formula, to be treated as income for 1945. The amount is not established by any evidence in the record. The agent testified that the contracts were made with the principal amount to be paid over a three-year period. If from this it be assumed that one-third of the amount reported for 1945 was received in that year the amount would
 
 
 29
 be ..................................... $19,073.90
 
 
 30
 and if we add the corrected figure of ... 49,074.40
 
 
 31
 ----------
 
 
 32
 the correct amount of gross income
 
 
 33
 would be ........................... $68,148.30
 
 
 34
 ----------
 
 
 35
 and deducting ........................... 57,221.60
 
 
 36
 ----------
 
 
 37
 we have as excess income over the
 
 
 38
 amount reported .................... $10,926.70
 
 
 39
 which is less than 25 per cent. of the amount of gross income stated in the return. But whether the portion received in 1945 of the amount returned for 1945 be one-third or more or less, the burden of establishing that it was enough to meet the test of Section 275(c) was upon the Commissioner. We cannot agree with the Tax Court that the Commissioner has sustained the burden of showing that Section 275(c) is applicable to the year 1945.
 
 
 40
 The determination of the Internal Revenue agent of the gross income for 1946 was made by a different method than that which he used for 1945. The procedures used for 1946 are thus summarized in the Tax Court's opinion:
 
 
 41
 'In April or May 1946 an accountant installed a system or control accounts to reflect the data shown on the cards. Under the system, upon the receipt of a purchase order the contract receivable account was debited and the deferred gross profit account was credited. The cost basis of the lot being sold was transferred from the land investment account and charged to the deferred gross profit account. When all the payments had been received the deferred gross profit was transferred to current profit and reported in income.
 
 
 42
 'For the taxable years 1946 to 1949, inclusive, the agent used the control accounts. He determined the cash received on active contracts each year by analyzing the credit to the contracts receivable account, eliminating credits from sources other than cash. Also eliminated were canceled contracts, returned checks, and refunds actually made. Against cash received on active contracts each year, the cost basis of the contract entered into each year, was deducted. The cost was arrived at by an analysis of the land account.'
 
 
 43
 For 1946 the agent computed cash received as $214,368.92, with land costs of $17,230.05, and gross profit remaining in the amount of $197,138.87. The taxpayers reported gross profit of $98,341.29. The agent's figure of receipts from sales in 1945 was $58,343.15, and costs, using the actual cost figures, were $22,082.85. The disparity between land costs and sales receipts from the two years is marked and is unexplained. Significant, we think, is the testimony of the agent before the Tax Court as to the manner in which he computed land costs to be credited against receipts from sales in 1946. The record shows the following:
 
 
 44
 'Q. Where did you get the cost of land figure which you subtracted? A. That figure was, the cost of land amounts to the same figure that the taxpayer has per his records. But I'd like to say this, it was pretty hard to determine the actual cost of the land on this basis. And you will find that I have gone through for the years 1946, 1947 and 1948 and taken a ratio or percentage of the land for sale and deducted it during or as a cost of land during those years.
 
 
 45
 'Q. Now, did you do this entirely on your own? A. Yes, sir.
 
 
 46
 'Q. Did you-- A. Well, no, sir. I didn't do it entirely on my own. I talked to Mr. Wood; I talked to Mr. Ross, but they did not see my figures that I used.
 
 
 47
 'Q. Well, did they suggest the percentages that you used, the ratios? A. No, sir. I merely drew those ratios from-- my ratios were effected by my conversations with them.
 
 
 48
 'Q. In other words, you were not arbitrary-- or, were you arbitrary, Mr. Nichols, in arriving at your amount? 'Mr. McGregor: I object to that.
 
 
 49
 'The Court: He may answer for whatever it may be worth.
 
 
 50
 'A. I wouldn't answer that.
 
 
 51
 'By Mr. Maxwell: Q. My point was that you did talk to these people? A. Oh, yes. I am not saying that this cost of land is the correct cost. This is an near as I can determine.'
 
 
 52
 An examination of the entire record has failed to dispel our doubts as to the correctness of the agent's determination of the taxpayers' 1946 gross income. Without further particularization, the doubt is accented by the admission of the agent that his land cost figures may not be correct and his refusal to say whether or not his ratio basis for determining costs was arbitrary. We think the Commissioner failed to carry the burden of proving that Section 275(c) was applicable for the year 1946.
 
 
 53
 As to the years 1947, 1948 and 1949, we have no statute of limitation questions. If the Commissioner was acting within the scope of his discretionary power under Section 41, and we hold that he was, there is a presumption of correctness attaching to his determinations. Archer v. Commissioner of Internal Revenue, 5 Cir., 1955, 227 F.2d 270. The decision of the Tax Court is not shown to be clearly erroneous as to these years. See Goldberg v. Commissioner of Internal Revenue, 5 Cir., 1956, 239 F.2d 316.
 
 
 54
 The Tax Court agreed with the Commissioner that the costs of roads in the Florida land development should be capitalized rather than treated as a deductible business expense. The taxpayers' construction of roads was for the purpose of providing an improvement to the land development. We see no error in the action of the Tax Court sustaining the Commissioner's determination. 26 U.S.C.A. I.R.C. 1939, § 24(a)(2); 4 Mertens Law of Federal Income Taxation, Ch. 25, p. 73, § 25.25.
 
 
 55
 No appeal has been taken from the Tax Court's determination that the negligence penalties as determined by the Commissioner should be disallowed.
 
 
 56
 The Tax Court's judgment for deficiencies for 1945 and 1946 is reversed; the case is remanded as to 1947, 1948 and 1949 to permit the entry of judgment conforming with this opinion and with the stipulation filed below.
 
 
 57
 Affirmed in part and reversed in part.