**Jay J. and Rose B. ARMES, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 30256.

United States Court of Appeals, Fifth Circuit.

July 9, 1971.

Rehearing Denied Sept. 30, 1971.

Towner Leeper, El Paso, Tex., for petitioners-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Mary J. McGinn, Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, K. Martin Worthy, Chief Counsel, Daniel J. Boyer, Atty., Internal Revenue Service, for respondent-appellee.

Before GOLDBERG, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Taxpayers [1] appeal from a decision of the Tax Court redetermining and assessing deficiencies (and negligence penalties) for income tax for the tax years 1960–62. The Commissioner had ascertained the deficiencies by reconstructing taxpayers' income through the use of bank deposits and excess cash expenditures, and one pivotal question before the Tax Court was whether the excess reconstructed receipts represented taxable income.

For all three years there is a common question of whether, in concluding taxpayers had failed to disprove the Commissioner's determination that the bank deposits represented taxable income, the Tax Court was clearly erroneous. As to 1960 and 1961 only, there is an additional question. The deficiency notices for those years were not issued within three years of the time returns were due to be filed. The Commissioner relied on an exception, I.R.C. § 6501(e) (1) (A), to the basic three year statute of limitations contained in § 6501, and for that purpose he was required to prove that taxpayers had failed to report an amount equal to more than 25 percent of reported gross income for each of those years. At issue is whether, to sustain his burden, the Commissioner was required to prove not only the making of the bank deposits but also that they stemmed from taxable income, and if so, whether he discharged that burden.

We affirm with respect to 1962, and reverse and remand with respect to 1960–61.

■ We can dispose quickly of the first question, common to all years, whether the Tax Court erred in finding the taxpayers had failed to discharge their burden, e. g., Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212, 215 (1933), of proving the Commissioner's determination of deficiencies to be incorrect. With stipulated adjustments the court accepted the Commissioner's determination of taxpayer's gross receipts calculated through the use of bank deposits and cash expenditures. It then undertook to resolve the question whether the gross receipts thus calculated represented taxable income. For 1962 the taxpayer had claimed the receipt of $6000 as an investment in his business by Linda Chew. The critical facts with regard to this claimed investment were supported solely by the testimony of taxpayer and Miss Chew, now

1. Mrs Rose Armes is a party because during the tax years in question she was married to Jay Armes and they filed joint returns. Taxpayer will be used in the singular to denote Jay Armes.

taxpayer's wife. The Tax Court's rejection of this testimony and consequent finding that taxpayers had failed to prove this claim were not clearly erroneous. *See* Archer v. Comm'r of Internal Revenue, 227 F.2d 270, 273 (5th Cir. 1955); Boyett v. Comm'r of Internal Revenue, 204 F.2d 205, 207–208 (5th Cir. 1953). Taxpayer also claimed the receipt of substantial gifts from Pedro Armas [sic], his father. But the Commissioner introduced evidence from which it could be concluded that Armas would have been unable to accumulate the sums of money claimed, *see* United States v. Holovachka, 314 F.2d 345, 354 (7th Cir. 1963), and the Tax Court's resolution of this issue in favor of the Commissioner was not clearly erroneous. With respect to 1962, therefore, taxpayers failed to prove incorrect the Commissioner's determination that the bank deposits represented taxable income.

Since we must remand to the Tax Court for a retrial for the years 1960 and 1961 for the reasons hereinafter discussed, we pretermit consideration of the findings with respect to whether the Commissioner's determinations of deficiencies for those years were correct. On remand these findings may be altered or the issue mooted. However, we note that even if the Commissioner is held to be entitled to the benefit of the three year extension of the statute of limitations, the Tax Court should make specific findings with respect to each of the nontaxable sources claimed by taxpayers for those years. If the taxpayers are able to prove any of them, even though those proved are insufficient in amount to account for all the bank deposits during 1960 and 1961, they will be entitled to have their reconstructed gross income and tax liabilities reduced pro tanto.

■■ Turning to the statute of limitations issue, unlike the situation where the question is the correctness of a deficiency, the parties agree that where, as here, the Commissioner seeks to rely on an exception to the normal three year statute of limitations, he bears the burden of proving by a preponderance of the evidence that he is entitled to invoke that exception. Wood v. Comm'r of Internal Revenue, 245 F.2d 888, 893–895 (5 Cir. 1957); Elsie SoRelle, 22 T.C. 459, 486–488 (1954), C. A. Reis, 1 T.C. 9, 13 (1942). But they disagree on just what this burden entails. Taxpayers recognize that in a civil case with no statute of limitations problem the Commissioner's determination that bank deposits represent taxable income, like the rest of the findings in his notice of deficiency, is presumptively correct and the taxpayer bears the burden of proving otherwise. But they contend that since bank deposits do not of themselves indicate the receipt of income, in cases where the Commissioner has the burden of proof he must show not only the making of the bank deposits but also the existence of a "likely source, from which the [trier of fact] could reasonably find" that the deposits resulted from taxable income. Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 136, 99 L.Ed. 150, 165 (1954). The Commissioner's position is that the presumption that bank deposits represent taxable income is not merely the presumption of correctness attaching to his notice of deficiency, but rather an independent, "logical" presumption, and that the Commissioner is entitled to its benefits even where he bears the burden of proof. In essence, his main contention is that to satisfy his burden he need prove no more than the making of the bank deposits.

We conclude that the taxpayer has the better of the argument. First, in other species of income reconstruction cases where the government bears the burden of proof the Supreme Court has required it to prove at least a "likely source" of taxable income as a prerequisite to a finding that excess reconstructed receipts in fact represent taxable income. *E. g.*, Holland v. United States, *supra*. We recognize that *Holland* was a net worth rather than a bank deposits case, and that proof of a likely source may be even more important in net worth cases where increases in net worth may be as

much due to an overstatement of deductions as an understatement of income. *See* David Courtney, 28 T.C. 658, 667–669 (1957). But the possibility of excessive deductions was not the problem confronting the Court in *Holland*. The Court's holding was in response to petitioner's contention that the government had not proved that the net worth increases arose from taxable rather than nontaxable sources, and there was no mention of the excessive deductions question. In this context the Court required the government to prove a likely source of taxable income, and we think this requirement cannot rationally be dispensed with in a bank deposits case. Nor is *Holland* distinguishable on the ground that it was a criminal case while this is not. Although the government's proof need satisfy a less stringent standard in a civil case, this only affects the quantum of proof required, and does not justify effectively relieving the government of its burden. *Cf.* Thomas v. Comm'r, 232 F.2d 520, 526 (1st Cir. 1956).

Second, decisional law does not support the Commissioner's assertion about the nature of the presumption. The decisions we have found, and the Commissioner furnishes none to the contrary, support the conclusion that this presumption is no more than a permissible inference which the Commissioner may draw in attempting to ascertain the existence of a deficiency, *see* Hague Estate v. Comm'r of Internal Revenue, 132 F.2d 775, 776 (2d Cir. 1943); Goe v. Comm'r of Internal Revenue, 198 F.2d 851, 852 (3d Cir. 1952), justified in some instances on the additional ground that the reconstruction was necessitated by taxpayer's own failure to keep adequate books and records. *E. g.,* Doll v. Glenn, 231 F.2d 186, 188 (6th Cir. 1956); Halle v. Comm'r of Internal Revenue, 175 F.2d 500, 503 (2d Cir. 1949). Like the rest of the Commissioner's determinations in assessing a deficiency, such an inference is presumed to be correct in a straight deficiency case, *e. g.,* Hoefle v. Comm'r of Internal Revenue, 114 F.2d 713, 714 (6th Cir. 1940); William O'Dwyer, 28 T.C. 698, 705 (1957), aff'd, 266 F.2d 575 (4th Cir. 1959), unless it appears arbitrary, or until taxpayer proves it incorrect. *E. g.,* Cohen v. Comm'r of Internal Revenue, 266 F.2d 5, 11–12 (9th Cir. 1959); *see* Hague Estate v. Comm'r of Internal Revenue, *supra.*

Therefore, we reject the Commissioner's theory that there exists a separate, "logical" presumption which he may invoke even in a judicial proceeding where he bears the burden of proof. Since the Commissioner has the burden of proof with respect to the statute of limitations, it was necessary for him to prove more than the making of the bank deposits to obtain a judicial determination that, for purposes of § 6501(e) (1) (A), the bank deposits represented gross income. *Cf.* Thomas B. Jones, 29 T.C. 601, 615–619 (1957). In short he was required to prove a likely taxable source for the deposits, and the court was not entitled to presume that they came from taxable sources.

Most of the Tax Court's findings of fact were made with reference to evidence of the existence of nontaxable sources, brought forward by the taxpayer on the substantive question whether the Commissioner's determination of deficiencies had been proved incorrect. The court resolved the statute of limitations issue by reference to these findings, which makes it impossible for us to determine whether, in reaching its conclusions on the limitations issue, the court placed the burden of proof on the Commissioner where it properly falls.[2]

2. The Tax Court did find that the Commissioner "proved" the existence of "possible" taxable sources of income, but, as a matter of law, these findings do not comport with the requirement that the Commissioner prove a "likely source." Holland v. United States, *supra.* Moreover, the record now before us would not sustain the requisite findings of likely sources. The Commissioner introduced no evidence to show that taxpayer's main business, known as The Investigators, was capable of generating substantial receipts in excess of those reported. Evidence of income from a partnership engaged in the sale and in-

■ As to 1960 and 1961, the case must therefore be reversed and remanded to the Tax Court. On remand the court should make specific findings of fact and conclusions of law with respect to each taxable source alleged by the Commissioner,[3] and each source put forward by the taxpayer as a nontaxable source, and, applying the respective correct burden of proof, render findings and conclusions accordingly.

The additional contentions of taxpayers relate to matters not likely to recur on a retrial under the mandate of this opinion.

Affirmed as to 1962. Reversed and remanded as to 1960 and 1961.

## ON PETITION FOR REHEARING

■ By petition for rehearing the government urges a single point—that we recede from the statement in footnote 2 that the Commissioner introduced no evidence to show that the taxpayer's main business, The Investigators, was capable of generating substantial receipts in excess of those reported.

In the first place, it must be recognized that the situation under discussion was one in which the burden of proof was upon the government.

Second, the government's argument is that the mere showing that a taxpayer engaged in an activity which was the source of *any* income is, without regard

---

stallation of burglar alarms related only to 1963–64. There was no evidence that taxpayer's dealing in firearms were sufficient to constitute a likely source of any substantial income. And efforts to show that taxpayer received income from prostitution activities never reached beyond suspicion and innuendo. The Commissioner may, of course, introduce more substantial proof, if he has any, on a retrial.

3. We do not exclude the possibility that, as an alternative to proving the existence of a "likely source," from which it could be inferred the bank deposits represented taxable income, *see* n. 2, *supra*, the Commissioner may, with respect to 1961, prevail in another manner. During June of that year the taxpayer received two checks from a customer. The Commissioner may be able to establish that a portion of these checks sufficient in amount to satisfy the Commissioner's 1961 burden was not included in taxpayer's gross income for that year.
Or, the parties may wish to brief and the Tax Court may wish to consider whether United States v. Massei, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958), is relevant to the Commissioner's burden on the statute of limitations issue. Whether *Massei*, which permits the Commissioner to prevail in some instances by disproving the existence of nontaxable sources for the excess reconstructed receipts, applies to the statute of limitations question has not been fully briefed before this court and, since the

case must be retried with regard to the years 1960–61, we think that the relevance of this decision is a matter to be determined by the Tax Court in the first instance. Without expressing any opinion on the outcome of this question, we point out that (1) *Massei* itself in terms requires the government to disprove "all possible nontaxable" sources of income; and (2) that Comm'r of Internal Revenue v. Thomas, 261 F.2d 643 (1st Cir. 1958), and Gatling v. Comm'r of Internal Revenue, 286 F.2d 139 (4th Cir. 1961), which modify *Massei* by holding that the Commissioner may succeed by negativing only those nontaxable sources alleged by the taxpayer, were straight deficiency cases, with respect to which most courts have held that the Commissioner's determination that reconstructed receipts represent taxable income is prima facie correct even without proof of either a likely source or the nonexistence of tax free sources. If the Tax Court considers *Massei* applicable, then the question whether *Gatling* and *Thomas* apply in circumstances where the Commissioner bears the burden of proof should be explicitly determined.
To the extent, if any, that the Tax Court determines *Massei*, or *Gatling* and *Thomas*, relevant it should, in the light of that determination, reexamine its factual findings with respect to whether Commissioner has, by a preponderance of the evidence, disproved the taxable sources claimed by taxpayers or, if necessary, the existence of all possible nontaxable sources.

to the nature or scope of the activity or the size of the income, sufficient to establish that activity as a "likely source" of unreported income. We do not consider it to be appropriate for us to attempt to catalog the varying circumstantial evidence from which in varying situations an inference of "likelihood" may be drawn. But we do not in this case accept the proposition that "likely source" of unreported income is "any source of any income."

The petition for rehearing is denied.