W. KIRK MARVIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marvin v. Commissioner
Docket No. 6893-80.
United States Tax Court
T.C. Memo 1983-126; 1983 Tax Ct. Memo LEXIS 659; 45 T.C.M. (CCH) 944; T.C.M. (RIA) 83126; March 10, 1983. Jean S. Schanen, for the petitioner. Jeannette A. Cyphers, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge:* Respondent determined deficiencies of income tax plus additions to tax against W. Kirk Marvin (Hereinafter "petitioner") as follows: Additions to Tax
Additions to Tax
Year
Deficiency
Section 6651(a)(1) [1]
Section 6653(a)
1975
$5,642
$232
$282
1976
9,022
451
After concessions, the issues remaining for decision are: (1) *662 Whether petitioner is entitled to a theft loss deduction of $6,600 for 1975; (2) whether petitioner is liable for the addition to tax under section 6651(a)(1) for 1975; (3) whether petitioner is liable for the addition to tax under section 6653(a) for 1975; (4) whether petitioner is entitled to a deduction under section 212(2) or section 212(3) in the amount of $26,500 in 1976 which was purportedly paid for "tax education" and; (5) whether petitioner is liable for the addition to tax under section 6653(a) for 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact, together with the exhibits attached thereto, are incorporated herein by this reference. [2]
At the time of the filing of the petition in this case, petitioner resided in Wasilla, Alaska. I. 1975 Tax Year
Petitioner was *663 employed as a worker on the Alaska pipeline during 1975, and received wages in the amount of $24,214 as compensation for these services. [3] Petitioner's employers withheld and prepaid Federal income tax on these wages in the amount of $4,713 during 1975. Respondent determined that petitioner was required to file a Federal income tax return for 1975, and that he failed to file such return.Accordingly, respondent determined a deficiency in the amount of $5,642, [4] plus additions to tax under section 6651(a)(1) and section 6653(a) for 1975. Petitioner contends that he filed a timely Federal income tax return for 1975 and that he should therefore not be held liable for additions to tax under section 6651(a)(1) and section 6653(a). *664 Additionally, by amendment to his petition, petitioner asserts that he is entitled to a deduction of $6,600 in 1975, which purportedly represents the value of a trailer and its contents (reduced by $100 pursuant to section 165(c)(3)), which were allegedly stolen from him in 1975. [5]
II 1976 Tax Year
Petitioner timely filed his 1976 Federal income tax return with the Internal Revenue Service Center at Ogden, Utah. Charles H. Bumpus and Glenn A. Huff were business associates and friends residing in Alaska. Through their investment partnership, Minn-Arctic Development Co. ("MADCO" herein), Mr. Bumpus and Mr. Huff were mutually involved in various real estate partnerships. They had offices in the same building and shared a single secretary. In mid-1976, Mr. Bumpus and Mr. Huff developed concerns about the effect that the death of a partner would have upon the operation of their various partnerships and consulted an attorney in an attempt to resolve these *665 concerns. However, before Mr. Bumpus and Mr. Huff received what they considered to be satisfactory advice from their attorney in this regard, Mr. Bumpus was approached by one Hirmam Conley, a representative of the American Law Association (hereinafter "ALA"). Mr. conley represented that there was a way for Mr. Bumpus and Mr. Huff to eliminate their income tax and estate tax liability, and to avoid probate upon the death of a partner, through the use of a certain kind of foreign trust organization. [6] Mr. Conley further represented that the subject had been throughly researched by one Karl Dahlstrom, and that this information would be presented to members of ALA at a two-day seminar in mid-November, 1976, for a fee of $6,600. *666 The prospect of achieving the above-asserted advantages was particularly attractive to Mr. Bumpus and Mr. Huff. Accordingly, through their partnership, MADCO, Mr. Bumpus and Mr. Huff joined ALA, paid a single seminar fee of $6,600, [7] and attended the seminar which was presented by Karl Dahlstrom in mid-November, 1976, in Alaska. At the seminar, Mr. Bumpus and Mr. Huff, as MADCO partners, received one package of materials (hereinafter referred to as the "tax package"). The tax package included preprinted forms for establishing "business trust organizations," preprinted minutes and trust certificates, and numerous excerpts from cases, legal commentary, newspaper articles, and other materials regarding trusts. Mr. Bumpus and Mr. Huff were very impressed by the informatioin which was presented at the seminar. In fact, they decided that they would disseminate the information they received at the seminar to all of their partners and partnerships so that they could alter their organizational format and henceforth conduct their affairs in the form of "business trust organizations," rather than partnerships. Mr. *667 Bumpus and Mr. Huff decided that the best method by which the tax package materials could be disseminated to their partners and partnerships was through the utilization of their new-found knowledge relating to foreign business trust organizations. Accordingly, shortly after the Dahlstrom seminar in November, 1976, they arranged for documents to be executed which purported to establish a number of foreign business trust organizations, over some of which Mr. Bumpus intended to, and did, exercise complete control, and over others of which Mr. Huff intended to, and did, exercise complete control. One of the trust organizations over which Mr. Bumpus exercised complete control was named Worldwide Marketing and Tax Consultants (hereinafter "Worldwide"); and one of the trust organizations over which Mr. Huff exercised complete control was named Zurich Trust (hereinafter "Zurich"). Upon the formation of these organizations, Mr. Bumpus purportedly transferred the tax package materials to Worldwide, while Mr. Huff purportedly transferred the same materials to a trust organization under his control.Thus, the tax package materials purportedly formed part of the corpus of one entity controlled *668 by Mr. Bumpus, and one entity controlled by Mr. Huff. Having thus established these organizations, Mr. Bumpus and Mr. Huff began to implement their plans to disseminate the tax package materials to their other partners and partnerships through their newly-created foreign organizations. Additionally, the tax package materials were made available to certain individuals who were not partners in any of the various partnerships in which Mr. Bumpus and Mr. Huff were partners. The transactions by which the tax packages were made available to the various partners, partnerships, and third parties were cast in the form of sales. The prices purportedly paid for the tax package by each purchaser varied as follows: PURCHASER
PRICE
Woody Lake Estates partnership
$6,725
Knollwood Heights partnership
17,800
Big Lake Heights partnership
23,000
Blair Estate partnership
6,750
Contracting Enghineers & Associates
partnership
31,800
Skyline Estates partnership
8,750
Wasilla Estates partnership
15,900
Northern Lights Estate partnership
3,600
Wasilla Developments partnership
41,900
Eve Watson
8,750
George Simon
17,800
Charles E. Bumpus
11,000
Ralph Jokela
14,500
Norville Rich
10,675
Johnson Investments or Eugene Johnson
31,800
Johnson Investments or Eugene Johnson
26,500
Charles Bumpus Real Estate
10,675
Glenn A. Huff
3,825
Donald Saur
23,000
Ralph Huff
14,500
Christopher Bumpus
8,750
Eugene F. Morton
47,400
W. Kirk Marvin (petitioner herein)
26,500
*669 Although each of the purchasers of a tax package received similar materials, [8] the prices they purportedly paid for such materials, as indicated above, varied from $3,600 to $47,400.At trial, neither Mr. Bumpus nor Mr. Huff offered any credible explanation as to how these varying prices were determined. Each purported sale of a tax package was preplanned and structured *670 similarly. A prospective purchaser would borrow the tax package purchase price from one of Mr. Bumpus' controlled entities and then buy a tax package from one of Mr. Huff's controlled entities, or vice versa, using the proceeds of the loan to pay the purchase price. Mr. Bumpus and Mr. Huff were careful to structure each purported purchase so that a tax package would not be purchased from the same or commonly-controlled entity that loaned the purchase price to the buyer. This was done because Messrs. Bumpus and Huff thought that it would not "look right" to have a purchaser both borrow the money and purchase the tax package from entities controlled by the same individual. At the time the loans were made to prospective purchasers of tax packages, the parties intended that the borrowers would not ultimately be required to repay the loan to the original lender. Two methods were subsequently devised by which the above-preconceived plan was implemented. One method was applied to notes signed by the individual purchasers, while the other method was applied to notes signed by the partnerships which purchased tax packages. With respect to the former, nearly all of the individual purchaser's *671 promissory notes were given by the lending entity to entities controlled by the individual purchaser or a relative of that purchaser. Each note signed by a partnership, on the other hand, was repaid with partnership funds. However, each of these repayments was then immediately transferred in proportionate shares by the "lender" to entities controlled by each partner. Thus, these repayments, in fact, resulted in a distribution of partnership funds to each partner's controlled entity. Petitioner's purported purchase of a tax package generally followed the structure outlined above, except that the promissory note petitioner had signed to effectuate the purchase had not, at the time of trial, been returned to his control. In December, 1976, petitioner first borrowed $26,500 from Zurich (a Huff-controlled foreign business trust organization), and signed a promissory note, bearing interest at a rate of eight percent. Both interest and principal on this note were to fall due in December, 1999. Then, pursuant to a written contract, petitioner simultaneously transferred the $26,500 to Worldwide (a Bumpus-controlled foreign business trust organization) and received the tax package materials *672 in exchange. As of the date of trial, petitioner had not used the tax package materials for any purpose. No business trust organizations were created by petitioner and he presented no credible explanation as to his use or expected use of the materials, nor what specific benefit he expected to derive from them. On his 1976 return, petitioner deducted the $26,500 purportedly paid for the tax package as a "tax education" expense. Respondent disallowed this deduction in full, and additionally determined an addition to tax under section 6653(a) for petitioner's 1976 tax year. OPINION I 1975 Tax Year
In his amended petition, petitioner contends that he was entitled to a deduction in the amount of $6,600 in 1975 which he failed to claim on his alleged 1975 return. This amount purportedly represents petitioner's basis in a trailer and its contents which were allegedly stolen from him in 1975. Petitioner thus contends in his amended petition that no deficiency or addition to tax should be found for 1975 as the result of said additional deduction, but that there was an overpayment, in some undisclosed amount. Section 165 provides in pertinent part: (a) General Rule. *673 -- There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. -- For purposes of subsection (a), the basis for determining the amount of deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. -- In the case of an individual, the deduction under subsection (a) shall be limited to-- (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * To be entitled to a deduction under section 165, petitioner must sustain his burden of proving that he actually sustained the loss, and the amount thereof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The only evidence petitioner produced in support of this burden was his own testimony, and the testimony of one Richard *674 Schmitz. Mr. Schmitz merely testified that sometime in the winter of 1975, petitioner told him his trailer was stolen. He did not testify to ever having seen this trailer and indeed indicated that the only reason he thought petitioner owned a trailer was because petitioner had told him so. Additionally, a significant portion of the asserted deduction consists of the purported value of the contents of the trailer at the time of the alleged theft, and this witness offered no testimony whatsoever regarding such contents. We therefore find the testimony of Mr. Schmitz to lack significant probative force. Petitioner testified that he purchased a trailer sometime in 1975 for $1,800, and the next night, the trailer was stolen, along with various kinds of personal property contained therein. He could not remember the full name of the seller of the trailer, and produced no sales receipt, registration documents or other records which would tend to establish that he owned the trailer, its cost or his basis in the property kept therein. Moreover, petitioner failed to provide any police reports or other records or testimony establishing that a theft in fact occurred.Petitioner's testimony *675 as to the contents of the trailer, as well as the theft of the trailer, and his ownership thereof (and its contents), was vague, self-serving, generally uncorroborated, and evasive. In the absence of any other probative evidence tending to establish the alleged theft, and the basis of the property purportedly stolen, we must hold that petitioner has failed to carry his burden of proof. Cf. Armes v. Commissioner,448 F.2d 972 (5th Cir. 1971), affg. on this issue a Memorandum Opinion of this Court; Banks v. Commissioner,322 F.2d 530 (8th Cir. 1963), affg. on this issue a Memorandum Opinion of this Court; and Weiss v. Commissioner,221 F.2d 152 (8th Cir. 1955), affg. a Memorandum Opinion of this Court. The asserted deduction must therefore be disallowed. We must next decide whether petitioner is liable for the addition to tax under section 6651(a)(1) for 1975. Section 6651(a)(1) provides in pertinent part: * * * In case of failure - (1) to file any return required * * * on the date prescribed therefor * * *, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added *676 to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. Petitioner does not contend that he was not required to file a return for 1975 under the provisions of section 6012(a). Petitioner does maintain that he filed a timely 1975 return, and therefore asserts that no addition to tax under section 6651(a)(1) should be imposed for that year. Alternatively, petitioner contends that if he did fail to file a 1975 return, such failure was due to reasonable cause. Once again, the burden is on petitioner to show either that he timely filed a return for 1975, or that his failure to file was due to reasonable cause. Rule 142(a); Welch v. Helvering,supra. The only evidence presented by petitioner in support of his burden of proof was his own testimony. Petitioner testified that his 1975 return was prepared in early 1976 by a representative of the Internal Revenue Service who appeared at petitioner's job site in Alaska and offered to *677 prepare his return for a fee.According to petitioner, this individual completed a "short form" (i.e., Form 1040A), which petitioner signed and which he assumed was mailed to the office of the Internal Revenue Service by the return preparer. Petitioner claims that this tax return showed that he was entitled to a small refund.However, petitioner stated that he never received the refund and did not pursue it due to its de minimis amount. Petitioner was not able to name the individual who allegedly prepared his 1975 return, nor was petitioner able to present a copy of the alleged return at trial. We find that petitioner's testimony, on its face, lacks credibility. Initially, petitioner does not dispute that he received wage income in the amount of $24,214 in 1975; nor does he dispute that his employer withheld and prepaid Federal income taxes of $4,713 with respect to those wages. Applying the 1975 tax rates to these figures shows that petitioner would not have been entitled to a refund in any amount in 1975, but rather would have owed additional tax of $929, after giving credit for $4,713 of tax withheld. [9] Additionally, we view with a raised eyebrow petitioner's testimony to *678 the effect that he paid a fee to the Internal Revenue Service representative for his preparation of petitioner's 1975 1040A "short form." It is well known that the Internal Revenue Service does not charge a fee for its services in preparing tax returns. Finally, petitioner's testimony in this regard was vague, self-serving, and uncorroborated. We are not required to accept such testimony, and we do not in this case. See Armes v. Commissioner,supra;Banks v. Commissioner,supra;Weiss v. Commissioner, supra.
We therefore hold that petitioner has failed to carry his burden to show that a 1975 return was filed or that his failure to file was due to reasonable cause, and respondent's determination of an addition to tax under section 6651(a)(1) will be sustained. The final issue for decision regarding the 1975 tax year is whether petitioner is liable *679 for the addition to tax under section 6653(a) asserted by respondent. Section 6653(a) provides for an addition to tax of 5 percent of the "underpayment" where any part of such underpayment is due to negligence or intentional disregard of rules and regulations. Petitioner has the burden of proving that respondent's determination under section 6653(a) is in error. Rule 142(a); Bixby v. Commissioner,58 T.C. 757 (1972). Petitioner has failed to show that respondent's action was erroneous. We must therefore sustain respondent's determination under section 6653(a). [10]
II. 1976 Tax Year
The first issue for decision relating to the 1976 tax year is whether petitioner is entitled to deduct $26,500 which he purportedly paid for the purchase of materials relating to business trust organizations. If we decide that petitioner is not entitled to deduct this $26,500, we must also decide whether petitioner is liable for the addition to tax under section 6653(a). Respondent contends that no portion of the $26,500 purported payment is deductible by petitioner. This contention is grounded *680 on two alternative theories. First, respondent argues that petitioner's "purchase" of the tax package materials was devoid of economic reality in that no amounts were, in substance, paid by petitioner. Alternatively, respondent maintains that even assuming that the $26,500 was, in substance, paid by petitioner, such payment represented merely a personal expense of petitioner and is therefore rendered nondeductible by section 262. Petitioner, on the other hand, contends that $26,500 was in substance, as well as in form, paid in 1976, and further argues that this payment represented a deductible expenditure under either section 212(2) or (3). Section 212 provides in pertinent part: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. Petitioner has the burden of proving that the amounts in dispute were both "ordinary and necessary" and were expended for the purposes designated in the statute. Rule *681 142(a); Welch v. Helvering,supra. Since we think that petitioner has failed to show that the amount purportedly paid for the purchase of the tax package qualifies under the statutory standards, we need not consider respondent's first alternative argument. [11]
The record before us is totally devoid of any evidence that petitioner purchased the tax package materials "for the management, conservation or maintenance of property held for the production of income." To the contrary, the record makes it clear that the tax package materials were not actually put to any use by petitioner as of the time of trial. Moreover, the only evidence of petitioner's motivation in purchasing the tax package was his own testimony that he "considered taxes were something you should try and know about, even though it's impossible." Under these circumstances we must hold that petitioner has failed to carry his burden of proof with respect to the deductibility of the purported $26,500 payment under section 212(2).See Contini v. Commissioner,76 T.C. 447 (1981). Epp v. Commissioner,78 T.C. 801 (1982) *682 Luman v. Commissioner,79 T.C. 846 (1982). Nor can this purported payment of $26,500 be allowed under section 212(3). To be deductible under section 212, an expense must be "ordinary and necessary." Section 1.212-1(d), Income Tax Regs. An "ordinary and necessary" expense is one which is reasonable in amount and bears a proximate relation to the purpose of the expenditure. Section 1.212-1(d), Income Tax Regs.; see e.g. Commissioner v. Flowers,326 U.S. 465 (1946). As noted above, petitioner purportedly purchased the tax package because he "considered taxes were something you should try and know about…." Even assuming arguendo that petitioner's purported purpose in purchasing the tax package falls within one of the enumerated requirements of section 212(3), it would strain our credulity to conclude that petitioner's total expense of $26,500 was reasonable in amount or bore any reasonable relationship to his generalized desire to "try and know about" taxes, especially considering the fact that he believed such an endeavor to be "impossible." Cf. Wassenaar v. Commissioner,72 T.C. 1195 (1979). Accordingly, we hold that petitioner's *683 purported expenditure of $26,500 in 1976 is not deductible under section 212(3) since such expense was not reasonable in amount and did not bear a reasonable relationship to the alleged purpose of the expenditure, and was therefore not "ordinary and necessary" as required by that statute.Nor has petitioner demonstrated that the tax package was useful, or was used, in connection with the determination, collection, or refund of any tax owed by this petitioner, other than to supply him with a spurious deduction for its cost.Cf., Epp v. Commissioner,supra;Luman v. Commissioner,supra.Respondent's determination with respect to this issue will therefore be sustained. The final issue for decision is whether petitioner is liable for the addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a) for 1976. As in the case of petitioner's 1975 tax year, the burden of proof with respect to this issue is upon petitioner. Rule 142(a); Bixby v. Commissioner,supra.Petitioner has offered virtually no evidence to demonstrate that he used reasonable care in claiming the $26,500 deduction *684 on his 1976 return. It has not been shown that petitioner made any reasonable inquiry as to the income tax validity of his claiming this deduction, and we think a prudent person would have sought competent advice in this regard. [12] Petitioner has thus failed to carry his burden of proof with respect to this issue, and respondent's determination will therefore be sustained. To reflect the foregoing, Decision will be Entered under Rule 155.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. By order of the Chief Judge, the case was reassigned to Judge Jules G. Korner III↩. 1. All statutory references are to sections of the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. The parties have stipulated that the testimony of and exhibits introduced by certain witnesses in the case of Professional Services v. Commissioner,79 T.C. 888↩ (1982), are to be considered as part of the record in this case. Such witnesses included: Charles H. Bumpus, Glen Huff, Eugene Johnson, and Ronald Lange.
3. This figure apparently derives from petitioner's 1975 Form W-2. Although this Form W-2 has not been placed into evidence, petitioner does not dispute the accuracy of the above dollar amount, as determined by respondent, in his pleadings, and we therefore accept it as true.↩
4. This figure represents the amount of tax due before applying the credit under section 31 for income taxes withheld by petitioner's employer. See section 6211(b)(1).↩
5. In his amended petition, petitioner alleges that the total value of the trailer and its contents was $6,700. He further alleges that the value of the trailer was $1,700, and the value of its contents was $5,000.↩
6. The use of the following words and derivatives thereof in our findings of fact is for narrative convenience only, following the form in which the various transactions involved herein were cast, and is not intended to indicate any legal conclusions concerning the actual substance or legal effect of the transactions: "purchase," "sale," "loan," "note," "promissory note," "tax package," "trusts," "paid," "borrowed," "gift," "transfer," "contract," "liability," "entity," "business trust."↩
7. This was the standard fee charged for the Dahlstrom seminar.↩
8. When one of Mr. Bumpus' or Mr. Huff's related partnerships purchased a tax package, a copy of the tax package materials was not actually given to the partnership. Rather one set of the seminar materials was made available to the partnership at the office of Mr. Bumpus and Mr. Huff.However, all materials were made available to each purchasing partnership regardless of the price each paid. With respect to the individual purchasers of the tax packages, Mr. Bumpus and Mr. Huff suggested at trial that certain pages were removed from some of the packages when they were sold to these individuals. However, they failed to specify which pages were removed, and it is apparent from the record that, to the extent there was a variance in materials received by individual purchasers, that variance was insignificant.↩
9. The total tax of $5,642 is arrived at by applying the section 1(c) tax tables for 1975 to petitioner's gross income reduced by the personal exemption ($750), the standard deduction ($2,300), and then applying a general tax credit of $30 to the resulting tax liability.↩
10. Cf. Lee v. Commissioner,T.C. Memo. 1982-35↩ (1982).
11. Cf. Professional Services v. Commissioner,79 T.C. 888↩ (1982).
12. See e.g. Papp v. Commissioner,T.C. Memo. 1981-20 (1981); Gonsky v. Commissioner,T.C. Memo. 1981-76↩ (1981).