Fred M. ARCHER and Evie B. Archer, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15523.

United States Court of Appeals Fifth Circuit.

Nov. 25, 1955.

Edward A. White, Washington, D. C., Ewell G. Moore, Jr., Arlington, Va., Hal Lindsay, Atlanta, Ga., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., R. P. Hartzog, Acting Chief Counsel, Rollin H. Transue, Sp. Atty., I. R. S., Washington, D. C., George F. Lynch, Sp. Asst. to Atty. Gen., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This petition for review raises two questions for decision by this court: first, whether the Tax Court was in error in not accepting the statements by the petitioner, Fred Archer, and by his witnesses and deponents concerning certain of his assets at the beginning of the tax period and thereby concluding that the petitioner had substantially understated his income during the years in question; and second, whether there was sufficient evidence before the court to justify a finding of fraud.

Utilizing the net worth procedure for discovering and proving unreported income, the Commissioner of Internal Revenue assessed income tax deficiencies against the petitioner, Fred Archer, for the years 1942 and 1943, and against Fred Archer and his wife, Evie Archer, for the years 1944 and 1945.[1] The Commissioner also assessed fifty percent penalty for fraud as provided for by 26 U.S.C.A. § 293(b) for each of the years, and a six percent statutory penalty for substantial understatement of estimated tax in 1945 as called for in 26 U.S.C.A. § 294 (d) (2). The total of tax deficiencies and penalties as computed by the Commissioner was $26,106.76, but the Tax Court reduced this figure to $17,511.-42.[2]

During the years in question and for some years prior thereto, the taxpayer had engaged in one or more of a variety of activities from which he derived his income. These included farming, owning tenant farms, dealing in used cars, trucks and auto junk, operating a trucking business, trading in mules, and selling illegal whiskey. He lived on a farm where he was able to maintain himself and his family with relatively small cash outlay. His largest source of income during the tax years involved here was from the sale of used cars.

No books or records were kept by the taxpayer and for this reason the Commissioner found it necessary to determine net income through investigation by the net worth method. The use of this method is not contested by the petitioner. The parties agreed upon two sets of stipulated facts, one of which included a net worth schedule and a figure covering living expenses for each of the years. However, the petitioner reserved the right to show "by competent evidence" that the net worth schedules should have included other assets and that his living expenses were less than the amounts stipulated.

The stipulated net worth schedule for the beginning of the tax period—Decem-

1. Mrs. Archer's activities or income were not in controversy, and her name entered this case only for the reason that a joint return was filed in two of the years in question; consequently, Mr. Archer alone will be referred to as either taxpayer or petitioner.

2. The taxpayer had reported a total taxable income for the years in question of $5,202.60. The Commissioner determined the correct taxable net income for these years to be $58,082.76, and this figure was reduced to $43,149.77.

ber 31, 1941—contained no allowance for used car stock, notes receivable, cash other than cash in the bank, mules, junk in his junk yard, or warehoused cotton. Furthermore the stipulated facts set the petitioner's estimated personal and living expenditures at a figure ranging from $2,400 to $3,000 a year. It was with respect to these items that the petitioner took primary issue at the hearing before the Tax Court and which he challenges in this petition for review.

The taxpayer's basic contention with respect to this phase of the case is that he showed by competent and uncontroverted evidence at the hearing that, on December 31, 1941, he had a total of approximately $25,000 in used cars for sale, in cash and in promissory notes, for which the Commissioner had given him no credit on the opening net worth schedule. In addition, he claims that it was shown that he had animals and equipment valued at almost $5,000, whereas the Commissioner gave him credit for only fifty dollars on this item. Finally, petitioner contends that it was shown that his average personal living expenses were only $900 per year during the tax period.

In its Memorandum Findings of Fact and Opinion, the Tax Court refused to accept many of the computations of the Commissioner as set forth in his deficiency assessment and in the stipulated facts. It made many sizeable adjustments in these computations, particularly in the opening net worth and living expense figures, and all such adjustments were to the advantage of the taxpayer. On the opening net worth schedule recomputed by the Tax Court, the petitioner was given credit for $3,500 in notes re-

ceivable, $4,000 in cash and/or cars on hand, $1,000 in junk, $3,500 in warehoused cotton, and $850 in farm equipment and mules. These and other adjustments combined to increase the opening net worth by more than $15,000. Also, the petitioner's estimated living expenses were reduced to a uniform $2,000 for each of the years in question. Despite these adjustments made in the taxpayer's favor, the Tax Court found the petitioner had substantially understated his income for each of the four years, having reported but eighty percent of his 1942 income, seven percent of his 1943 income, eight percent of his 1944 income, and nine percent of his 1945 income. The petitioner maintains that the Tax Court acted arbitrarily and unreasonably in making these adjustments and that they were not in line with the uncontroverted evidence presented by him.

■ It is well established that the determination of deficiency by the Commissioner is prima facie correct, and the burden rests upon the taxpayer to overcome this presumption and to show to the satisfaction of the Tax Court that the determination was not correct.[3] However, the Commissioner was not required to rely upon this presumption alone, inasmuch as he and the taxpayer had entered into a stipulation as to the items in controversy, which stipulation by its terms was to be accepted by the Court unless the taxpayer was able to prove "by competent evidence" that it was not correct.[4]

■ Upon review, the decision of the Tax Court is to be treated in the same manner as a decision of a District Court sitting without a jury,[5] and therefore,

3. Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Trippett v. Commissioner, 5 Cir., 1941, 118 F.2d 764; Duncan v. Commissioner, 5 Cir., 1949, 173 F.2d 218.

In its opinion the Tax Court demonstrated its awareness of this rule: "It is axiomatic that respondent's determination of deficiency is presumptively correct and petitioners have the burden of proving error in such determination. This Court has noted its reluctance 'to

decide cases on the basis of burden of proof. Nevertheless, in the interest of orderly presentation and disposition of cases, rules relating to the burden of proof have been formulated and of necessity must be followed.'"

4. Cf. H. Hackfield & Co. v. United States, 1905, 197 U.S. 442, 25 S.Ct. 456, 49 L. Ed. 826.

5. 26 U.S.C.A. § 1141(a) (1939); I.R.C. 1954, 26 U.S.C.A. § 7482(a).

under Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A., the findings of the Court are not to be set aside on appeal unless they are "clearly erroneous". 5 Moore's Federal Practice, Par. 52.03(5), p. 2636; Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 1951, 192 F.2d 633, certiorari denied 343 U.S. 941, 72 S.Ct. 1033, 96 L.Ed. 1347.

■ Petitioner presented evidence tending to support his contentions as to the value of assets held by him on December 21, 1941 and of his living and personal expenditures during the tax period. This evidence consisted largely of his oral testimony (which was subject to depreciation because of his stipulated conviction of violating the criminal laws), but there were also other witnesses and deponents whose integrity was not attacked. Petitioner takes the position that this evidence was credible, competent and uncontradicted and, since most of it was unimpeached, the Court was obliged to accept it and make adjustments in conformity with it. However, the Court was entitled to view the evidence against a projected background of its reasonableness and logical consistency, the conduct of witnesses, the attendant circumstances, and the stipulated facts.[6]

■ The Court undoubtedly and with propriety kept in mind the fact that the petitioner had agreed to stipulated net worth schedules and living expense figures. Even though petitioner reserved the right to show by competent evidence that these figures were incorrect, he had placed in the record figures of evidentiary value which the Tax Court was bound to weigh, and had thus fettered himself with a practical burden over and above that attendant upon overcoming the Commissioner's deficiency assessment. The stipulation was competent evidence and contributed some weight tending to challenge all of the evidence adduced by petitioner so that he was compelled to meet and answer the facts to which he had bound himself by the stipulation.

It is at once apparent that the Tax Court viewed the manner and conduct of witnesses and the reasonableness and logical consistency of their testimony, stating in the opinion that their testimony was "nebulous and unsubstantial, being based more upon speculation and estimates than upon facts and evidence * * * [and] in general, a muddled series of vague recollections, unsupported by corroborating evidence".

■ Moreover, the court is not bound to accept testimony at face value even when it is uncontroverted if it is improbable, unreasonable or questionable. Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501; Boyett v. Commissioner, 5 Cir., 1953, 204 F.2d 205; Carmack v. Commissioner, 5 Cir., 1950, 183 F.2d 1, certiorari denied 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636.[7]

■■ It is further obvious that the Tax Court found a degree of merit in petitioner's proof in view of the fact that it made substantial adjustments in the Commissioner's figures, in favor of the petitioner. That court was justified in discounting petitioner's evidence, and we cannot say that the extent of reliance put upon it, as reflected in the adjustments, was unreasonable or unsupported. It is not necessary, under the facts of this case, that the amounts fixed by the Tax Court be supported by testimony establishing the specific figures arrived at by it. Cf. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Burford-Toothaker Tractor Co. v. Commissioner, supra, and Guggenheim v. Helvering, 2 Cir., 1941, 117 F.2d 469, 474. The

6. Cf. 5 Moore's Federal Practice, Par. 52.04, pp. 2637 et seq.

7. The situation here is quite different from the situations which faced us in those cases in which we have held that the Tax Court was not warranted in refusing to accept positive, reasonable and consistent evidence offered by the petitioner. e. g. Ross v. Commissioner, 5 Cir., 1955, 227 F.2d 265; Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709; Foran v. Commissioner, 5 Cir., 1948, 165 F.2d 705.

taxpayer kept no books as required by law and has no standing to complain of the adjustments made by the Tax Court and thought by it to be reasonable. His failure to keep records and furnish proof upon which the Court could act made such estimates necessary. Petitioner was cast by the law and his stipulation under the burden of showing that the findings of the Tax Court were not justified and the particulars with respect to the errors he charges to have been committed; and that burden has not been sustained.

On the matter of fraud, although it is fundamental that this is a fact which the Commissioner is required to prove by clear and convincing evidence,[8] it, like other findings of fact, will not be upset unless clearly erroneous, Boyett v. Commissioner, supra. The Tax Court, in concluding that the tax deficiencies were due to fraud, expressed the view that consistent substantial understatements of income for a period of four years, together with a clear pattern of reporting deductions with accuracy in detail while being deliberately evasive in the matter of income, made it impossible to believe the understatements were due to inadvertence, negligence or honest errors.[9] Circumstances such as these are competent upon which to base a finding of fraud. Cf. Bryan v. Commissioner, 5 Cir., 1954, 209 F.2d 822, 828.

A reading of the entire evidence in this record fails to leave us with a definite and firm conviction that a mistake was committed by the Tax Court. United States v. United States Gypsum Co.,

333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. The decisions of the Tax Court are, therefore,

Affirmed.

8. Saenz v. Kenedy, 5 Cir.; 1949, 178 F. 2d 417.

9. The following are portions of the Tax Court's opinion in this connection:
"As to the issue of petitioners' fraudulent intent, this is a question of fact to be decided from all the relevant circumstances. Petitioner may have been lacking in formal education and untutored in the intricacies of detailed books and records, but he was a successful business man, respected in the community for his business acumen. In the preparation of the returns here in issue, he was diligent in itemizing and taking deductions for in-terest expenses, depreciation, medical expenses, contributions, taxes, and bad debts. However, in reporting his income, he was deliberately evasive. * * *

"We cannot believe that all this was due to inadvertence or negligence. The understatements of income as shown by the net-worth schedules, were too substantial to permit us to believe that petitioner's annual estimates of his income were honest ones."

It is proper to note also that it was admitted in oral argument before us that the infliction of some fraud penalty was justified.