ROBERT EARL LEE JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lee v. Commissioner
Docket No. 3796-80.
United States Tax Court
T.C. Memo 1982-35; 1982 Tax Ct. Memo LEXIS 714; 43 T.C.M. (CCH) 374; T.C.M. (RIA) 82035; January 28, 1982. *714 P claimed deductions for the alleged theft of cash and property in two separate burglaries. Held, P failed to prove that he sustained any thefts deductible under sec. 165, I.R.C. 1954. Robert Earl Lee, Jr., pro se. Gregory A. Vega, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 2,815.79 in the petitioner's Federal *715 income tax for 1976 and an addition to tax of $ 140.79 under section 6653(a) of the Internal Revenue Code of 1954. [1] The issues for decision are: (1) Whether the petitioner is entitled to a deduction under section 165 for money and property allegedly stolen from his residence during the course of two burglaries in 1976, and (2) whether the petitioner is liable for the addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Robert Earl Lee, Jr., resided in Chicago, Ill., at the time he filed his petition in this case. He timely filed his 1976 individual Federal income tax return with the Internal Revenue Service. The petitioner worked for the 3M Company (3M) as a machine operator for a number of years. From 1970 through 1976, his wages and withholdings were as follows: Federal Income
State Tax
FICA
Year
Wages
Tax Withholdings
Withholdings
Withholdings
1970
Illegible
Illegible
$ 255.81
Illegible
1971
$ 10,644.37
$ 1,879.88
266.11
$ 405.60
1972
12,489.52
2,476.17
312.24
468.00
1973
13,323.30
2,707.48
333.10
631.80
1974
15,348.89
3,300.43
383.79
772.20
1975
13,358.28
2,669.25
333.97
781.46
1976
19,039.86
4,472.60
476.01
895.05
*716 The petitioner lived at the home of his mother until sometime in 1975 when he purchased his own home. During that year, he maintained checking and savings accounts with both the Standard Bank and the Beverly Bank. On May 8, 1975, he applied for a loan from the Beverly Bank for the purposes of making auto repairs, painting, and purchasing tires. On such application, he listed as assets a checking account with a balance of $ 300, savings of $ 50, and bonds purchased through work. He also listed $ 2,464.99 in total debts, including two bank loans of $ 1,163.35 and $ 901.64, and Master Charge indebtedness of $ 400.00. On the same application, he listed monthly rental payments of $ 125.00. On October 2, 1975, the petitioner borrower $ 1,548.00 from the General Finance Corporation of Illinois. The prepaid finance charge on such loan was $ 465.88, representing an effective interest rate of 24.056 percent. On December 15, 1975, he applied to the Beverly Bank for a loan of $ 4,975.00 for the purposes of purchasing a 1975 Buick Regal automobile and refinancing the amount owed on his 1973 Chevy Nova automobile. On such loan application, he listed his Standard Bank savings account *717 balance at $ 25.00 and reported that he had checking accounts at the Beverly and Standard Banks. On such application, he also listed a number of creditors and the amounts owed them, including the Standard Bank ($ 1,429.80), the Beverly Bank ($ 662.20), Local Loan ($ 1,056.00), General Finance Corporation ($ 1,462.00), and Master Charge ($ 500.00). Additionally, he listed the Guild Mortgage Company as the holder of a mortgage on his home with an unpaid balance of $ 21,200.00. On his Federal income tax return for 1976, the petitioner deducted a total of $ 2,450.10 as interest, including the following amounts: Home mortgage
$ 1,822.92
Local Loan
186.04
Beverly Bank
104.98
Heritage Bank
105.32
General Finance Corp.
230.84
On May 7, 1976, the petitioner reported to the Chicago Police Department that a burglary had occurred at his home. He informed the police investigator that a number of items were stolen while he was at work, including three suits, two hats, an iron, and a hair dryer. Such items were valued by the petitioner at $ 160. In addition, he informed the investigator that $ 900 in cash was stolen. On December 3, 1976, the petitioner reported *718 to the Chicago Police Department that a second burglary had occurred at his home. He reported to the police that in such burglary, $ 11,300 in cash and four or five pairs of pants were stolen. The petitioner estimated the value of these pants to be $ 50. In 1976, the petitioner had homeowners' insurance, but he did not report either of these burglaries to his insurance company. On his Federal income tax return for 1976, the petitioner claimed theft losses of $ 12,410 and a deduction of $ 12,210 with respect to such losses. In his notice of deficiency, the Commissioner disallowed such deductions on the ground that the petitioner had not established that any deductible loss was sustained during 1976. In addition, the Commissioner determined that part of the underpayment of tax for 1976 was due to the petitioner's negligence or intentional disregard of rules and regulations and that the petitioner was liable for the addition to tax under section 6653(a). OPINION The first issue for decision in this case is whether the petitioner is entitled to deduct under section 165 any amount for theft losses allegedly suffered in 1976. Section 165(a) allows a deduction for any loss sustained *719 during the taxable year not compensated for by insurance or otherwise. In the case of an individual, section 165(c) limits the deductions allowable under section 165(a). Section 165(c)(3) allows individuals deductions for "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." Such losses are allowed only to the extent that the amount of each loss exceeds $ 100. Under the regulations, the maximum amount of loss which can be taken into account for purposes of section 165(a) is limited to the lesser of the fair market value of the property immediately before the theft minus its fair market value immediately after the theft or its adjusted basis. Secs. 1.165-8, 1.165-7(a) and (b), Income Tax Regs. The burden of establishing both the existence and amount of a theft is on the petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure; Elliott v. Commissioner,40 T.C. 304 (1963). In support of his claim, the petitioner presented his own testimony in which he stated that the thefts had occurred and described the money and property that allegedly had been stolen. A petitioner's *720 testimony may be sufficient to prove his right to a deduction in some cases, but it need not be accepted where it is "improbable, unreasonable or questionable." Archer v. Commissioner,227 F. 2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. [2] We have some difficulty in believing the petitioner's story that he accumulated over $ 12,000 and that he kept such amount in cash in his home. The only corroboration offered by him were the police reports, but they were based on information which he provided the police, and accordingly they carry no more weight than his testimony. When we examine the surrounding circumstances, they cast even more doubt on the petitioner's testimony. It is very difficult to believe that if the petitioner sustained a burglary in May of 1976 in which $ 900 in cash was stolen, he would continue to keep over $ 11,000 in cash in his home. Moreover, in 1975, he applied for at least three loans, with the interest rate on *721 one of such loans being in excess of 24 percent. On his return for 1976, he reported a total of $ 2,450.10 of interest expense, including $ 627.18 specifically relating to such loans. If he had a large cash hoard, we find it difficult to accept that he would have arranged such loans and paid such interest. In addition, he had both checking and savings accounts with banks so that he was not adverse to the use of banking institutions. Finally, there is the fact that he had insurance, but he presented no claim to the insurance company The petitioner's attempts to explain away those facts The petitioner's attempt to explain away from facts were not persuasive. He testified that he borrowed money so that he could establish a credit rating, that he felt secure in keeping the cash in his home because of a dog belonging to a neighbor, and that he did not present an insurance claim because it would result in increased premiums. For someone of his income, his loans were substantial, and they were continued into 1976 as shown by the interest deduction claimed by him for that year. We are not convinced that he would have incurred that large an interest obligation simply to establish *722 a credit rating. Nor are we persuaded that he would forego a claimed loss of over $ 12,000 simply because of a possible increase in the insurance premiums. In reviewing the circumstances, we are certainly not convinced that he sustained the loss of over $ 11,000 in December of 1976. Although his other claims are not as obviously untenable, we do not know what to believe and what to reject since it is clear that some of his claims are not well founded. For example, he informed the police that $ 900 in cash and $ 160 of clothing and other items were removed from his home in the course of the first burglary; yet, on an amended return submitted after the Commissioner issued the notice of deficiency, he claimed that his first loss stemmed not from a theft, but from a decrease in the value of his 1973 Chevy Nova. Further doubt is cast on the propriety of his claimed losses since he made no further mention of the Nova at trial or on brief; instead, he reasserted his original position that the losses were of cash and property. Hence, we must conclude that he has failed to carry his burden of proving that he sustained any of the theft losses claimed by him, and we hold that the deductions *723 claimed by him are not allowable. The second issue for decision is whether the petitioner is liable for an addition to tax under section 6653(a) due to negligence or intentional disregard of rules and regulations. The petitioner has the burden of showing that he is not liable for such addition to tax. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Courtney v. Commissioner,28 T.C. 658, 669-670 (1957). As the petitioner has offered on testimony or other evidence to rebut the Commissioner's determination, he has failed to meet his burden of proof. Accordingly, we also sustain the Commissioner's determination on this issue. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976.↩
2. See also Ladner v. Commissioner, T.C. Memo. 1981-573; Samsa v. Commissioner,T.C. Memo. 1981-517; Capalbo v. Commissioner,T.C. Memo. 1977-412↩.