ESTATE OF FREDERICK J. KEITEL, DECEASED, DOROTHY J. KEITEL, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Keitel v. Commissioner
Docket No. 12615-87
United States Tax Court
T.C. Memo 1990-416; 1990 Tax Ct. Memo LEXIS 433; 60 T.C.M. (CCH) 425; T.C.M. (RIA) 90416; August 6, 1990, Filed *433 Decision will be entered under Rule 155. Spencer B. Robbins, for the petitioner. Albert G. Kobylarz, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 21,674.08 in decedent's Federal estate tax and an addition to tax of $ 3,251 pursuant to section 6651(a)(1). [1]
Petitioner concedes that $ 5,000 claimed on the estate tax return as commissions for the executrix have not been paid. Respondent concedes that petitioner paid New Jersey inheritance taxes of $ 5,750 and that the amount of the credit for state death taxes under section 2011 is to be determined in a Rule 155 computation. Thus, the remaining issues for decision are: (1) the date-of-death value of Wenke's Motel, which was the principal asset of decedent's wholly-owned corporation; (2) whether the proceeds of a $ 10,000 life insurance policy on decedent's life are includable in decedent's gross estate; (3) whether petitioner is entitled to an estate tax *434 deduction for attorney's fees; and (4) whether petitioner is liable for an addition to tax, pursuant to section 6651(a)(1), for failure to timely file the estate tax return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Frederick J. Keitel died a resident of New Jersey on April 24, 1983. The decedent's former wife, Dorothy Keitel, was appointed executrix of his estate. She resided in Point Pleasant, New Jersey, at the time the petition was filed. She filed the estate tax return late; it was due on January 24, 1984 (nine months after the date of decedent's death) but was not mailed to respondent until April 10, 1984. At the time of his death, decedent owned all of the common stock of Wenke's Motel, Inc. (Wenke's) which was bequeathed to Dorothy Keitel. The only asset of consequence of Wenke's was a motel complex situated on .98 acres of land in Point Pleasant, New Jersey; there were no liabilities of consequence. The motel complex was located approximately 30 to 40 blocks (2-1/2 to 3 miles) from the Atlantic Ocean located in a local neighborhood commercial *435 district; it was comprised of a house, a 5 unit motel building and 18 cottages. Each cottage had its own small kitchen with a stove and refrigerator. The motel was operated on a seasonal basis, from April through September. Decedent and his family were responsible for its operation. Decedent handled the maintenance and repairs with the help of his sons. Due to decedent's illness, which lasted several years, the condition of the motel had deteriorated. Nevertheless, it was open for business for the 1983 season immediately following decedent's death. In preparation for the 1983 season, Daniel, decedent's son, repaired screens, painted the units, replaced the pool filter, and repaired roof shingles on the cottages. Although further repairs were needed, they were not completed because of limitations of time, money, and skills. In February 1984, Mrs. Keitel had the motel appraised by Edward M. Mautner (Mr. Mautner). Using the market approach, i.e., comparable sales, Mr. Mautner appraised the motel at $ 233,500 as of February 1, 1984. This appraisal was based upon the property's highest and best use which in Mr. Mautner's opinion was for "development of highway retail, multi-family *436 units and professional offices." In March 1984, Edmund Durrua and his wife (the Durruas) contacted Mrs. Keitel and expressed an interest in acquiring the motel. The Durruas believed they could operate the motel profitably if extensive repair and maintenance work was done and if the motel was operated on a year-round basis. Mrs. Keitel offered to sell the motel to the Durruas for $ 400,000. At the end of March 1984, an agreement was reached to sell all of the stock of Wenke's to the Durruas for $ 375,000 in cash. Settlement occurred on May 10, 1984. [2]
The estate tax return reported the Wenke's stock as having a date-of-death value of $ 290,000. Prior to 1968, decedent owned a $ 10,000 life insurance policy on his life; Dorothy Keitel was the named beneficiary. When the Keitels were divorced in 1968, she received physical possession of the policy. The policy was in effect at the time of decedent's death, and Mrs. Keitel received the insurance proceeds. The policy was not included in the decedent's gross *437 estate. Petitioner deducted on the estate tax return amounts estimated for attorney fees of $ 5,000 and executrix's commissions of $ 5,000. The attorney's fees were later fixed at $ 6,000 and the amount was paid. No documentary evidence was offered as to whether the attorney's fees were deducted on the fiduciary income tax return. Respondent determined the value of Wenke's stock on the date of decedent's death to be $ 341,000; he further determined that the insurance policy proceeds ($ 10,000) were includable in decedent's gross estate. Respondent disallowed the estimated expenses for attorney's and executrix's fees. OPINION 1. Valuation of Wenke's Motel Stock
The first issue involves the fair market value of Wenke's stock on the date of decedent's death. To resolve this question, we must decide the fair market value of the motel owned by Wenke's. Section 2031(a) provides that the value of decedent's gross estate includes "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." For purposes of section 2031(a), "value" means "fair market value," which section 20.2031-1(b), Estate Tax Regs., defines as: * * * the price at *438 which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having knowledge of relevant facts. * * *
Petitioner's expert witness, Paul M. Hayes, appraised the fair market value of the motel at $ 213,900 as of the date of death. As with Mr. Mautner's February 1984 appraisal, Mr. Hayes believed that the highest and best use of the property would be for "highway retail or a combination of professional offices and multi-family units." He therefore valued the property as a vacant lot. His valuation was determined under the market approach; however, in evaluating comparable sales, he did not consider the sale of the motel to the Durruas. Mr. Hayes testified that vacant land sale prices in Point Pleasant were increasing at 2.6 percent per month between the date of decedent's death and the sale to the Durruas. Respondent's expert, Richard M. Chaiken, appraised the fair market value of the motel at $ 350,000 as of the date of death, believing that the property's highest and best use was its continued use as a motel. Mr. Chaiken determined the fair market value using both the market approach and replacement *439 cost approach. At trial, Mr. Chaiken revised his appraisal downward to between $ 340,000 and $ 345,000 when he recognized that his original appraisal was based upon 25 motel units rather than 24 units. Valuation is an inexact science and each case necessarily turns on its own particular facts. Messing v. Commissioner, 48 T.C. 502, 512 (1967).The price set by a freely negotiated agreement made reasonably close to the valuation date is persuasive evidence of fair market value, Ambassador Apartments Inc. v. Commissioner, 50 T.C. 236, 244 (1968), affd. per curiam 406 F.2d 288 (2d Cir. 1969); Estate of Schroeder v. Commissioner, 13 T.C. 259, 263 (1949), except where a material change in circumstances occurs between the valuation date and the date of sale. See Estate of Spruill v. Commissioner, 88 T.C. 1197, 1233 (1987), and cases cited therein. We recognize that certain repair and maintenance work was done between the time of decedent's death and the sale to the Durruas. However, on the record before us, we can only speculate as to how much these improvements enhanced the value of the motel. Moreover, Mr. Durrua testified as to the extensive improvements he has been required to make *440 since acquiring the motel in 1984. Petitioner failed to show that the sale to the Durruas in 1984 was not one between a willing buyer and a willing seller. Thus, since no material change occurred between the date of death and the date of sale, we find that the $ 375,000 sales price of the motel must be given great weight. [3] However, there is an adequate basis in the record to justify a downward adjustment to the $ 375,000 sales price. Property values were increasing in Point Pleasant during 1983 and 1984. Respondent's expert, whose testimony we found persuasive, testified that such values were increasing between 5 and 10 percent during that period of time. [4] By discounting the $ 375,000 sales price by 5 and 10 percent, respectively, a value of between $ 337,500 and $ 356,250 results. Respondent's fair market value determination, as set forth in his notice of deficiency, falls within this range. Accordingly, we sustain his determination that the motel, *441 and in turn Wenke's stock, had a fair market value of $ 341,000 on the date of decedent's death. 2. Life Insurance Proceeds
We next must decide whether the proceeds of the $ 10,000 life insurance policy are includable in decedent's gross estate. A decedent's gross estate includes the proceeds of insurance policies on the decedent's life receivable by beneficiaries (other than the deceased's executor) if, at the time of death, the deceased possessed any of the incidents of ownership in the policy. Sec. 2042(2). The regulations under section 2042 provide that the term "incidents of ownership" includes the "power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain *442 from the insurer a loan against the surrender value of the policy." Sec. 20.2042-1(c)(2), Estate Tax Regs. Mrs. Keitel testified that she "received" the insurance policy pursuant to a 1968 divorce; she further stated that she received "physical possession" of the policy. Although she may have received physical possession of the insurance policy incident to her divorce, the relevant inquiry for section 2042 purposes is whether decedent possessed any incidents of ownership in the policy at the time of his death. A copy of the insurance policy was not offered into evidence, nor was any other documentation introduced which would enable us to ascertain the owner of the policy. Hence, petitioner failed to present sufficient evidence to meet its burden of proving that decedent did not have any incidents of ownership in the policy at his death. The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced, it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).We are unable to *443 conclude on this record whether decedent transferred all incidents of ownership in the policy to Mrs. Keitel or merely maintained the policy in force subsequent to the divorce. Accordingly, as petitioner has not met its burden of proof, we sustain respondent's determination and hold that the insurance proceeds are includable in decedent's gross estate under section 2042(2). 3. Claimed Deduction for Attorney's Fees
We now turn to whether petitioner is entitled to an estate tax deduction for attorney's fees. Section 2053(a)(2) authorizes an estate tax deduction for administration expenses. Administration expenses include attorney's fees. Sec. 20.2053-3(a), Estate Tax Regs. Petitioner is entitled to a deduction for attorney's fees which at the time of filing the estate tax return may reasonably be expected to be paid. In his reply brief, respondent (concedes that the attorney's fees were paid but argues that under section 642(g) no estate tax deduction is allowable because petitioner has not waived the right to take the deduction on the estate income tax return. We disagree with respondent's interpretation of section 642(g). Section 642(g) addresses amounts which are deductible *444 by an estate for income tax purposes and provides that amounts allowable under section 2053 may be deducted in computing an estate's taxable income if the right to take such deductions on Form 706, United States Estate Tax Return, is waived. Here, petitioner seeks to deduct the section 2053 expense on its estate tax return. Nothing in section 642(g) requires that an estate waive its right to take an income tax deduction in order to deduct section 2053 amounts on the estate tax return. Accordingly, we hold that petitioner is entitled to an estate tax deduction for the attorney's fees. [5]
4. Section 6651(a)(1) Addition to Tax
The final issue is whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file the estate tax return. Section 6651(a)(1) imposes an addition to tax for the failure to file a return, including returns required by section 6018, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." For 1983, section 6018(a)(3) required that *445 an estate tax return be filed for a gross estate which exceeded $ 275,000. Since section 6018(a)(3) links the filing requirement to the size of the gross estate, petitioner's argument that no return was due because no tax liability was shown is unfounded. The belatedly filed estate tax return reflected a gross estate in excess of the $ 275,000 filing requirement under section 6018(a)(3). The fact that such return calculated a taxable estate for which no estate tax was owing is irrelevant for purposes of section 6018. See Estate of Vriniotis v. Commissioner, 79 T.C. 298, 312 (1982). The estate tax return was due on January 23, 1984, which was nine months after the decedent's death; it was not mailed to respondent until April 10, 1984. The executrix failed to show reasonable cause for not filing the estate tax return on time. United States v. Boyle, 469 U.S. 241 (1985).Accordingly, we sustain respondent's determination of the section 6651(a)(1) addition to tax. To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the date of the decedent's death. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Based on the closing statement introduced into evidence, it appears that the Durruas acquired the motel rather than Wenke's stock. No explanation was given for this discrepancy.↩
3. Petitioner has not presented sufficient evidence from which we could conclude that the real estate market in Point Pleasant was subject to rapid price escalation. Cf. Estate of Spruill v. Commissioner, 88 T.C. 1197, 1233↩ (1987).
4. Mr. Hayes' estimate of appreciation rates of 2.6% per month was applicable to vacant land and not to improved real estate. Hence, we decline to adopt his figures. Mrs. Keitel and her son both testified, in general terms, that real estate prices were "skyrocketing." However, we need not accept their self-serving testimony. See Archer v. Commissioner, 227 F.2d 270, 273↩ (1955), affg. a Memorandum Opinion of this Court.
5. Petitioner's counsel stated at trial that the attorney's fees were not deducted on the estate income tax return. Such return, however, is not in evidence.↩