HATTIE M. (BRITT) TAYLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 14614-84.
United States Tax Court
T.C. Memo 1985-323; 1985 Tax Ct. Memo LEXIS 306; 50 T.C.M. (CCH) 313; T.C.M. (RIA) 85323; July 2, 1985. Hattie M. (Britt) Taylor, pro se. Warren P. Simonsen, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined a deficiency in petitioner's 1981 Federal income tax of $5,274. Respondent further determined additions to tax of $263.70 under section 6653(a)(1), [1] and an amount to be determined under section 6653(a)(2). [2]
*308 The issues to be decided are (1) whether petitioner is entitled to a deduction of $13,588.50 for contributions to the Universal Life Church in 1981; (2) whether petitioner is liable for additions to tax under section 6653(a); and (3) whether petitioner is liable for damages under section 6673. FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioner Hattie M. Taylor (hereinafter "petitioner") resided in Mitchellville, Maryland, when she filed the petition herein. She was not married in 1981. She married Thomas J. Taylor in 1982. Petitioner completed high school and had some post-high school education. During 1981, petitioner was employed as a Computer Systems Analyst with the Department of Agriculture. She was employed by the government for 16 years prior to 1981 and filed income tax returns for each of those years. She personally prepared her returns in 1980 and 1981. On her return for 1981, petitioner reported wages of $29,916 from her employment with the Department of Agriculture. The local congregation, number 42285 of the Universal Life Church (hereinafter "local congregation"), was founded on January 12, 1981 by petitioner, her husband *309 Thomas J. Taylor (hereinafter "Thomas"), and her husband's son Robert J. Taylor (hereinafter "Robert"). Thomas is the pastor of the local congregation, Robert is the treasurer and petitioner is the secretary. All three were members of the local congregation's Board of Directors. Petitioner was not a minister of the Universal Life Church in 1981. The local congregation did not maintain a bank account. Any donations were kept in a locked facility in the paster's residence. There were three keys to the congregation's treasury, one of which was available at all times in petitioner's home. It is unclear how contributions, if any, to the local congregation were used after they were deposited in the congregation's treasury. The congregation's budget for 1981 was not established at trial. A distribution of approximately $10,500 was made to Thomas, designated as a tax-exempt parsonage allowance under section 107; however, he elected to treat this as taxable income. There is no written arrangement between the local congregation and the ULC, Inc. concerning the disposition of funds on dissolution of the local congregation. On her Federal income tax return for 1981, petitioner claimed *310 a charitable deduction of $13,588 for contributions purportedly made to the local congregation. In his notice of deficiency, the Commissioner disallowed such deduction in its entirety. OPINION (1) Deductibility of Contributions.
Under section 170, a taxpayer is allowed a deduction for contributions to charitable organizations subject to certain limitations. In order to qualify for a deduction under section 170(c), petitioner must show (1) that she in fact made contributions; (2) that those contributions were made to a qualified tax-exempt organization; and (3) that no part of the net earnings of that organization inured to the benefit of any private individual. Davis v. Commissioner,81 T.C. 806 (1983), appeal filed (9th Cir. June 25, 1984); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). Deductions are a matter of legislative grace and the taxpayer bears the burden of proving entitlement to the claimed deduction. Deputy v. DuPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); *311 Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [3] For the following reasons, we find that petitioner has failed to meet this burden.
The testimony of petitioner, together with the testimony of her husband, Thomas J. Taylor, and that of her stepson, Robert J. Taylor, is replete with contradictions as to the timing of her contributions and the manner in which they were made and is therefore not believable. First, petitioner has not shown that she actually contributed any money to the local congregation. She testified that in 1981 she donated $14,110 in cash to the local congregation. Her reason for using cash for contributions was that it was "convenient." she further testified that she kept only enough money in the bank to pay her bills, and preferred to keep her money in her home. Petitioner stated that she had "salted away" a large amount of money over the years and that it was this money she contributed to the local congregation. However, the evidence established that petitioner maintained a checking account in 1981 and that she frequently used checks to pay for bills and *312 purchases under $50. Of a total of 172 checks written in 1981, 143 were written for amounts less than $50. Respondent argued in his brief that this habit is inconsistent with petitioner's testimony of large cash contributions. We agree. In her brief, petitioner argues that the record in this case indicates "a pattern of cash withdrawals, by automatic teller or bank counter check, for amounts in most cases identical to the amount donated. Further, the withdrawals occurred on the very day or the day before the donations were made." This is, of course, totally inconsistent with her earlier testimony concerning her substantial cash hoard. Thus, petitioner's testimony, her arguments, and the documentary evidence in this case are inconsistent as to the source of the income petitioner allegedly used to make contributions. In addition, both Robert and Thomas testified that services were usually held on Sunday and contributions were received on that day.According to the testimony, when a contribution was made, petitioner recorded the date and amount in a log under the donee's name. The contribution was then received by the treasurer and placed in the congregation's treasury. The log *313 was totalled and verified by the pastor and the treasurer at the end of each month. None of the dates written on the ledger sheet which purportedly enumerates petitioner's contributions, however, falls on a Sunday in 1981. This Court is not bound to accept testimony at face value, even if uncontroverted, if it is improbable, unreasonable, or questionable. Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Boyett v. Commissioner,204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Dougherty v. Commissioner,60 T.C. 917, 932-933 (1973). In the instant case, in view of the patent inconsistencies in the record, we do not accept petitioner's testimony at face value. Because the testimony and documentary evidence offered by petitioner are simply not believable, they do not support her claim that she made cash contributions to the local congregation in 1981. Prtitioner has failed to bring forward any credible evidence to show that she actually made the claimed contributions. Thus, she has failed to meet her burden of proof on this issue. Further, in order for a *314 contribution to be deductible under section 170(c), it must be an unconditional gift. The donor must surrender dominion and control over the subject matter of the contribution. Davis v. Commissioner,supra at 817; Seed v. Commissioner,57 T.C. 265, 275 (1971); DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). Even if petitioner had, in fact, made the contributions, they would have been placed in the church treasury. A key to the locked cabinet where the treasury was kept was available to petitioner. Because petitioner had access to the funds, she did not surrender dominion and control over them. Thus, she has failed to make the requisite gift to qualify for a section 170(c) deduction. Secondly, petitioner has failed to establish that contributions were made to a qualified tax-exempt organization. She correctly asserts that ULC, Inc. was a tax-exempt organization in 1981. [4] She claims that her local congregation was a tax-exempt organization because it was part of ULC, Inc. However, this Court has repeatedly held that ULC, Inc.'s specific exemption is not a group exemption. *315 Davis v. Commissioner,supra at 815. Thus, in order for contributions to be deductible under section 170(c), the local congregation must quality as a tax-exempt organization under section 501(c)(3). In order for a church to receive tax deductible contributions, it must be organized and operated exclusively for religious purposes. Section 170(c)(2)(B). If an organization fails to meet either the organizational or the operational test, it is not exempt. Section 1.501(c)(3)-1(a)(1), Income Tax Regs.
To satisfy the organizational test, the congregation's assets must be dedicated to an exempt purpose on liquidation. Section 1.501(c)(3)-1(a)(4), Income Tax Regs. Although both Thomas and Robert testified that, on dissolution, the assets of the local congregation would revert to the ULC, Inc., no documentary evidence was received to support this testimony. Furthermore, petitioner's husband testified that there was no written arrangement *316 concerning thedisposition of assets on dissolution. Considering the availability of the church treasury to the three members of the local congregation, it is difficult to believe that they would send any available funds to the ULC, Inc. if they should decide to dissolve their congregation. Based on the lack of a written agreement and the improbability of the testimony, the local congregation fails the organizational test. The operational test requires that an organization engage primarily in activities which further its exempt purpose. Section 1.501(c)(3)-1(c), Income Tax Regs. No documentary evidence was presented concerning the operations of the local congregation. Although Robert and Thomas testified that funds were disbursed to poor people to pay for housing, heat and other necessities, the congregation did not retain any record of these disbursements. Respondent has requested that this Court draw a negative inference that, had documentary evidence concerning the distribution of the local congregation's funds been available, such evidence, if produced, would be unfavorable to petitioner. Such an inference is permissible and will be drawn. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), *317 affd. 162 F.2d 513, (10th Cir. 1947). Thus, we must infer that the local congregation did not engage in such activity. Petitioner has failed to show that the local congregation engaged in activities furthering its exempt purpose. The congregation therefore fails the operational test. Finally, petitioner has failed to show that no part of the net earnings of the local congregation inured in whole or in part to any private individual. The fact that petitioner, Thomas, and Robert retained control over the church treasury, together with the inference that the congregation's funds were not used to further its exempt purpose, suggests that the local congregation was merely a means of channeling funds for nondeductible household expenses from petitioner to Thomas through the use of a parsonage allowance. This implication precludes a finding that no part of the congregation's net earnings inured to the benefit of any individual. Stephenson v. Commissioner,79 T.C. 995, 1003 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Petitioner has failed to prove that she actually made the claimed donations, that she relinquished dominion and control over *318 the gifts involved, that the purported contributions were made to a qualified tax exempt organization, and that no part of the congregation's net earnings inured to the benefit of any individual. Accordingly, petitioner is not entitled to a deduction under section 170. (2) Additions to Tax.
Respondent has determined that petitioner is liable for additions to tax under section 6653(a). Section 6653(a)(1) provides for an addition to tax of five percent of any underpayment which is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment due to negligence or intentional disregard of rules or regulations and for the period beginning on the last day prescribed by law for payment of the underpayment. Petitioner bears the burden of proof on this issue. Enoch v. Commissioner,57 T.C. 781, 802 (1972); Rule 142(a). Petitioner has completed a high school education and is employed as a computer systems analyst. She filed returns for sixteen years prior to 1981 and personally *319 prepared the returns for 1980 and 1981. She understood the percentage limitation on deductibility of charitable contributions imposed by section 170. Petitioner introduced no evidence showing that her underpayment was not due to negligence or intentional disregard of rules and regulations. Moreover, for tax years prior to 1981, petitioner demonstrated knowledge of the proper reporting of income. Beard v. Commissioner,82 T.C. 766, 780 (1984), on appeal (6th Cir. Sept. 24, 1984). We conclude that petitioner's underpayment of tax was due to negligence or intentional disregard of rules and regulations. Accordingly, we sustain respondent's determination with respect to the additions to tax under section 6653(a)(1). We also conclude, for purposes of the addition to tax under section 6653(a)(2), that all of petitioner's underpayment for 1981 was attributable to negligence or intentional disregard of rules and regulations. Finally, we must consider whether petitioner is liable for damages pursuant to section 6673. Section 6673 provides that the Court may award damages to the United States of up to $5,000 whenever it appears that the proceedings have been instituted *320 or maintained primarily for delay or that taxpayer's position is frivolous or groundless. The instant case falls squarely within this statute. Many cases based on substantially similar facts have been unsuccessfully litigated before this Court. See, e.g., Davis v. Commissioner,81 T.C. 806 (1983), appeal filed (9th Cir. June 25, 1984); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). Petitioner was aware of this, yet she persisted in litigating her case. [5] Petitioner has abused the process of this Court and wasted its resources and those of respondent. Therefore, we award damages to the United States under section 6673 in the amount of $2,500. *321 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue. ↩
2. Section 6653(a)(2), effective for taxes the last date prescribed for payment of which is after December 31, 1981, provides: There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601-- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax). Because neither assessment nor payment of the tax has occurred in this case, the period described in section 6653(a)(2)(B) has not yet closed, the therefore, the amount of the addition to tax under section 6653(a)(2) cannot be determined at this time.↩
3. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
4. On September 4, 1984, the Internal Revenue Service revoked its prior determination that the Universal Life Church, Inc. was a qualified organization under section 170(c)(2).Announcement 84-90, 1984-36 I.R.B. 32↩.
5. In her brief, petitioner argues that the imposition of damages under section 6673 is unconstitutional because it has a chilling effect on her First Amendment right to petition the government for a redress of grievances. We noted in Hatfield v. Commissioner,68 T.C. 895, 899↩ (1977), however, that "[a]ny citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw at the system." Because we find that petitioner's position in the instant case is frivolous, we do not believe she acted in good faith when she challenged respondent's determination. Therefore, we find her argument unpersuasive.